IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LARRY CALLOWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:08-CV-601-WKW [WO] |
| | ) | |
| HENRY COUNTY BOARD OF | ) | |
| EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This is a race discrimination suit against the Henry County Board of Education ("Board") for not hiring Larry Calloway, a black male, as the principal of Abbeville High School, and for voting not to renew his probationary contract as the principal of Abbeville Middle School. Calloway alleges a violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* ("Title VII"), and of 42 U.S.C. § 1981, by way of 42 U.S.C. § 1983. The Board has moved for summary judgment on all of the claims (Doc. # 18), and the parties have fully briefed the motion. Based upon a careful consideration of the arguments of counsel, the relevant law and the record as a whole, summary judgment is due to be granted. Calloway has not adduced sufficient evidence to create a genuine issue of material fact as to discriminatory intent.

# I. JURISDICTION

Subject-matter jurisdiction is exercised pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 2000e-5(f)(3).  The parties do not contest personal jurisdiction or venue, and the court finds that there are allegations sufficient to support both.

# II. FACTUAL AND PROCEDURAL BACKGROUND

Calloway is suing the Board for violations of Title VII and § 1981 (through § 1983),[1] for actions the Board took affecting his employment as an administrative employee in the Henry County school system.[2]  In May 2005, Calloway applied for and was denied the position of principal of Abbeville High School.  The Board hired a white male instead and offered Calloway the position of principal of Abbeville Middle School, which he accepted. Calloway alleges that the Board denied him the high school position for racial reasons.  In May 2007, the Board voted to not renew his contract as principal of Abbeville Middle School.  Calloway alleges that this action was done because had his contract been renewed, he would have been tenured as a principal and positioned to become the principal of another

---

[1] Section 1981 claims against state actors must be brought pursuant to § 1983.  *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337 (11th Cir. 2008).  The Board argues that the Complaint insufficiently alleges a § 1983 action because § 1981 and § 1983 are only cited once, in the Introduction, and never addressed specifically.  By the same logic, however, Calloway has failed to allege a Title VII claim as well.  Although the complaint is inartfully pled, the suit will be construed to allege both the Title VII and § 1983 causes of action.  This generous interpretation works no prejudice to the Board, which ultimately prevails on both claims.

[2] Record citations are given only for specific or controversial facts that are critical.

school in the county, Headland High School, which was a position he claims no non-white had ever held.[3]

The Board hired Calloway as principal of Abbeville Middle School on a two-year probationary contract for the 2005-2006 and 2006-2007 school years.[4]  He had applied for the principal position at Abbeville High School, but was hired for the middle school position instead.[5]  For the high school position, the Board hired a white male with around thirty years of experience, including as a classroom teacher, who had been serving as the assistant principal at Abbeville Middle School for two or three years.[6]  (Dennis Coe Dep. 38, Apr. 7, 2009 (Ex. 5 to Def.'s Mot. Summ. J. (Doc. # 28)).)

After his two-year probationary term, Calloway's contract as principal of Abbeville Middle School was up for renewal.  The Board rejected renewal on a vote of three to two. The vote split on racial lines, with the white members voting against renewal and the black members voting for it.  The Board instead hired the assistant principal at Abbeville Middle

---

[3] Calloway has conceded that these actions are the only bases for his claims.  (*See* Pl.'s Resp. Br. 18-19 (Ex. 1 to Pl.'s Resp. (Doc. # 25)).)

[4] When the Board hired him as principal of Abbeville Middle School, Calloway was the assistant principal of Headland High School, a position he had held for ten years.

[5] The parties dispute whether Calloway's application was specifically limited to the position of *principal* of Abbeville High School or whether during an interview with the Board, Calloway expressed an openness to being hired for the middle school position as well.  This factual dispute will be addressed in the discussion section.

[6] As noted later, this information is undisputed.

School, a black female.  Calloway stayed at Abbeville Middle School for one more year as its assistant principal before taking a job outside the school system.

The Board cites several reasons for why it accepted Superintendent Dennis Coe's recommendation that Calloway's contract not be renewed.  The Board claims that Coe's recommendation was founded on a good faith belief that Calloway was not suited for the position because of his performance during the probationary term.  It is Coe's position that he recommended nonrenewal for the following reasons: (1) Calloway's tardiness in arriving at school in the morning; (2) the deterioration in the school's cleanliness under his leadership; (3) dismissing eighth grade students one day without authority; (4) violating the Family Educational Rights and Privacy Act (FERPA); (5) embarrassing the school with poor planning for a Title I Targeted Assistance Plan Meeting with state officials; (6) failing to provide grades for and other information on students participating in the Target Assistance Plan; and (7) student behavior, particularly, student supervision in the morning.

Calloway challenges the factual basis for some of those claims.  The parties also dispute whether Coe met individually with each Board member before the vote to explain his recommendation.   The two members who deny any recollection of Coe specifically discussing Calloway's renewal with them, however, voted *for* renewal and otherwise presented no testimony that race informed the Board's vote.

Calloway filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in November 2007, received a right-to-sue letter in April 2008, and

filed a complaint in July 2008 (Doc. # 1).  The Board filed an Answer, asserting numerous affirmative defenses.  (Doc. # 3.)  On March 13, 2009, the Board moved for summary judgment (Doc. # 18) and filed a brief in support of its motion (Doc. # 19).  Calloway responded in opposition to summary judgment (Doc. # 25), and the Board replied (Doc. # 27).  This motion is now ready for resolution.

### III.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. Rule 56(c) (Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by

showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial."). What is material is determined by the substantive law applicable to the case. *Celotex*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). Furthermore, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (per curiam) (internal quotation marks and citation omitted).

A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine issue of material fact, the nonmoving party must produce evidence

such that a reasonable trier of fact could return a verdict in his favor).  If the evidence on which the nonmoving party relies, however, "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted).  "A mere 'scintilla' of evidence supporting the [nonmovant's] position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party," *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted), and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and do not suffice to oppose a motion for summary judgment.  *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (Plaintiff's "conclusory assertions . . . in the absence of supporting evidence, are insufficient to withstand summary judgment.").  Hence, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

Thus, in cases where the evidence before the court is admissible on its face or can be reduced to admissible form and indicates there is no genuine issue of material fact, and where

the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact).

## IV.  DISCUSSION

### A.    Title VII and Section 1981: Proving Discriminatory Intent

Calloway's claims of racial discrimination encompass two distinct incidents – the Board's selection for principal of Abbeville High School, and the Board's nonrenewal of his contract as principal of Abbeville Middle School – both of which are alleged for two separate causes of action, Title VII, and § 1983 (for violating § 1981).  Title VII prohibits employers from discriminating against an employee "with respect to his compensation, terms, conditions, or privileges of employment" on the basis of race, § 2000e-2(a)(1), and § 1981 prohibits intentional race discrimination "in the making and enforcement" of contracts, including employment contracts,[7] *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 472 (11th Cir. 1999).

A plaintiff alleging Title VII and § 1981 claims must prove discriminatory intent, but can satisfy this burden with either direct or circumstantial evidence.[8]  *E.g.*, *Crawford v.*

---

[7] Because the court finds no violation of § 1981, it is unnecessary to elaborate on the elements of § 1983, the vehicle by which the § 1981 challenge is raised.

[8] The analysis for proving discriminatory intent for a Title VII discriminatory treatment claim is the same for proving intentional discrimination under § 1981.  *Ferrill*, 168 F.3d at 472.

*Carroll*, 529 F.3d 961, 975-76 (11th Cir. 2008).  Direct evidence of discriminatory intent is

evidence that "'if believed proves [the] existence of [a] fact in issue without inference or

presumption.'" *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999) (quoting *Burrell*

*v. Bd. of Trustees of Ga. Military Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997)).  "'[O]nly the

most blatant remarks, whose intent could be nothing other than to discriminate' on the basis

of some impermissible factor" qualify.  *Id.* (quoting *Carter v. City of Miami*, 870 F.2d 578,

582 (11th Cir. 1989)).  Calloway has presented no such evidence.  He must rely on the

*McDonnell Douglas* framework to prove intent with circumstantial evidence.

      "Under the *McDonnell Douglas* framework, a plaintiff first must show an inference

of discriminatory intent, and thus carries the initial burden of establishing a *prima facie* case

of discrimination."  *Brooks v. County Comm'n*, 446 F.3d 1160, 1162 (11th Cir. 2006).  "To

make out a *prima facie* case of racial discrimination a plaintiff must show (1) [he] belongs

to a protected class; (2) [he] was qualified to do the job; (3) [he] was subjected to adverse

employment action; and (4) [his] employer treated similarly situated employees outside [his]

class more favorably."  *Crawford*, 529 F.3d at 970.  Once a plaintiff establishes a *prima facie*

case, under the *McDonnell Douglas* framework, the burden shifts to the employer "to

'articulate some legitimate, nondiscriminatory reason' for the adverse employment action."

*Id.* at 976 (quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).  Deficiencies

in job performance can be a legitimate reason for an adverse employment action.  *See, e.g.*,

*Rojas v. Fla.*, 285 F.3d 1339, 1343 (11th Cir. 2002) (per curiam) (noting that poor job

9

performance and tardiness are legitimate reasons for termination). Additionally, "[a] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Chapman v. Al Transport*, 229 F.3d 1012, 1034 (11th Cir. 2000) (en banc).

If the employer meets its burden, the burden shifts back to the plaintiff to show that the employer's stated reason for the adverse employment action was "pretext" for discrimination. *Crawford*, 529 F.3d at 976. The district court must determine, based on the evidence,[9] whether the plaintiff "'has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered reasons were not what actually motivated the conduct.'" *Id.* (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)). "The district court must evaluate whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Combs*, 106 F.3d at 1538 (quoting *Sheridan v. E.I. Dupont De Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir. 1996) (*en banc*)). If the plaintiff points to the disparity between his alleged superior qualifications and those of the selected applicant to show pretext, the disparities "'must be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'"

---

[9] The entire record must be considered, and it must be considered in the light most favorable to the nonmovant. *See, e.g.*, *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997).

*Brooks v. County Comm'n*, 446 F.3d at 1163.   Summary judgment is not available to an employer if the court determines that a reasonable jury "could conclude that the employer's proffered reasons were not the real reason for its decision."   *Combs*, 106 F.3d at 1538.

**B.   Application to Discrete Incidents**

   *1.   The Abbeville High School Principal Position*

   In May 2005, Calloway applied to be the principal of Abbeville High School.   The Board interviewed him for that position but instead offered him the position of principal of Abbeville Middle School, which he accepted.   The Board argues that Calloway's Title VII claim with respect to this incident is barred because neither the EEOC charge nor the Complaint preserves a claim with respect to this incident.   (Def.'s Reply 11.)   However, the Complaint states in paragraphs five and six that Calloway applied for and was denied the position of principal of Abbeville High School and that a white male was hired instead, and in paragraph nine, that the Board's "actions," in the plural, were racially motivated and designed to keep a white in the position of principal of Headland High School.   The EEOC charge alleges the same factual information.

   The Eleventh Circuit requires courts to read EEOC charges filed without the assistance of counsel "liberally."   *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004) (per curiam) (citing binding former Fifth Circuit precedent).   Although the complaint a plaintiff files in court alleging discrimination under Title VII "'is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge

of discrimination,'" *id.* (quoting *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000)), "'the scope of an EEOC complaint should not be strictly interpreted,'" *id.* (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970)).  The "proper inquiry" is whether the complaint "was like or related to, or grew out of, the allegations contained in [the] EEOC charge."  *Id.*

A liberal reading of the EEOC charge confirms that Calloway considered the choice for Abbeville High School principal to be a discriminatory action, and the Complaint's allegation tying the alleged discriminatory "actions" back to the Board's selection of the principal for Abbeville High School grew out of the EEOC charge's factual allegations.  A Title VII claim must be brought, however, within 180 days of the alleged unlawful unemployment practice.  § 2000e-5(e)(1).  Calloway filed his EEOC charge in November 2007, well after the 180-day deadline for the May 2005 employment action.  The Title VII claim on the Board's selection for principal of Abbeville High School therefore clearly goes out as time barred.[10]  (*See* Answer 1 (asserting defense).)

The Board argues that the § 1981 claim fails as well because Calloway has not established a *prima facie* case of intentional discrimination, and, in the alternative, that Calloway has failed to present evidence supporting pretext.  (Def.'s Reply 13.)  The Board is correct on the pretextual analysis.[11]

_____

[10] The conduct may still be considered, however, as background for the May 2007 employment action.

[11] It is assumed, without deciding, that Calloway has satisfied the elements of a *prima facie* case.

12

Calloway testified at his deposition that he submitted an application only for the high school position, the specific position, he claims, Coe orally encouraged him to pursue. (Larry Calloway Dep. 38-39, Feb. 12, 2009 (Ex. 1 to Def.'s Mot. Summ. J.).)[12]  The middle school position, however, was open at the same time as the high school position.  (Coe Dep. 33 (Ex. 4 to Pl.'s Resp.).)  Although Coe admits that he could not recall whether Calloway stated a preference for either position, Coe nevertheless recalls asking all of the applicants during an interview if they had a "comfort zone" with respect to the two positions the Board had open.  (Coe Dep. 33, 36 (Ex. 4 to Pl.'s Resp.).)  It is Coe's recollection that Calloway stated he had a preference for working with middle school students but that given his experience, he could work with high school students as well.  (Coe Dep. 36 (Ex. 4 to Pl.'s Resp.).)  Calloway denies that he indicated that preference at all,[13] but he admits that he told the committee that he could work with both groups of students.  (Calloway Dep. 46-47 (Ex. 3 to Pl.'s Resp.).)

Thus, there is a factual dispute as to whether Calloway expressed a preference for or desire to fill the middle school position, but that is not dispositive of the Board's motion.  This dispute jeopardizes only one of the reasons the Board gave for not hiring Calloway for the high school position.  To survive a motion for summary judgment, a plaintiff must rebut

---

[12] Calloway also submits his testimony that the application was specific to the high school position (Calloway Dep. 40 (Ex. 3 to Pl.'s Resp.)), but neither party submitted page 41 of the deposition, which would have shown Calloway's answer to the question on page 40, "What about that application, the document, made it specific to Abbeville High School?"

[13] Coe did testify that when he called Calloway to offer him the middle school position, he made the statement that he did not recall applying for it.  (Coe Dep. 39 (Ex. 4 to Pl.'s Resp.).)

*every* legitimate, nondiscriminatory reason for the employment decision. *Crawford v. City of Fairburn, Ga.*, 482 F.3d 1305, 1308 (11th Cir.), *cert. denied*, 128 S. Ct. 495 (2007).

In his affidavit, Coe stated that the applicant to whom the Board awarded the position was "better suited" for the job than Calloway was (Dennis Coe Aff. ¶ 4 (Ex. 2 to Def.'s Mot. Summ. J.), and at his deposition, Coe provided more details on the selection process and on why the other applicant was selected. Coe testified that the Board screened applicants by using a scoring system, and that the top five applicants emerging from that screening were interviewed by a committee comprised of two white and two black members. (Coe Dep. 34 (Ex. 5 to Def.'s Mot. Summ. J.).) Each committee member could ask questions, but the same questions were asked of all applicants. (Coe Dep. 34 (Ex. 5 to Def.'s Mot. Summ. J.).) Coe testified that the committee told the applicants during the interview an applicant may be found ideal for the middle school position and asked the applicants whether they would accept that position if offered it.[14] (Coe Dep. 37 (Ex. 4 to Pl.'s Resp.).) The committee then ranked the applicants, and the first-ranked applicant received the high school position, and the second-ranked, Calloway, the middle school position. (Coe Dep. 38 (Ex. 5 to Def.'s Mot. Summ. J.).) Coe testified that the first-ranked applicant had thirty years of experience and was an assistant principal of Abbeville Middle School at the time, and that he had teaching experience prior to that. (Coe Dep. 38 (Ex. 5 to Def.'s Mot. Summ. J.).)

---

[14] Coe stated that he thought Calloway had said he was "okay" with taking the middle school position. (Coe Dep. 37 (Ex. 4 to Pl.'s Resp.).) Calloway disputes that he signaled a preference for the middle school position, but, again, admits that he stated he could work with both groups.

Calloway presents no evidence that these reasons for hiring the first-ranked applicant were inconsistent, incoherent, or so weak that a jury could not find them worthy of credence, let alone any evidence as to why Calloway should have been hired *over* the selected applicant.  Coe and Calloway argue over whether Calloway indicated a *preference* for the middle school position, but a committee, the integrity of which Calloway has not challenged, ranked another individual above him and that individual had substantial and versatile experience in the school system, and was uniquely positioned to assume the role because of his work in Abbeville's lower school.  A reasonable factfinder could not find that the Board's reasons for the selection are unworthy of credence without more evidence contradicting the applicant's credentials or bolstering Calloway's.  Because Calloway fails to successfully rebut the Board's legitimate reasons for hiring another applicant for the high school position, that claim of racial discrimination under § 1981 is due to be dismissed.[15]

**2.      Renewing the Abbeville Middle School Principal Contract**

The Board voted at the end of Calloway's probationary period as principal of Abbeville Middle School not to renew his contract.  Calloway claims that the Board voted against him for discriminatory reasons because it did not want him to be in a position to become principal of Headland High School. (Compl. ¶ 9.) Calloway argues that had he been allowed to remain principal of Abbeville Middle School "he would have been the obvious leading candidate to become principal at Headlands [sic] High [School] (which . . . had a

---

[15] This analysis would have foreclosed the Title VII claim as well, had it not been time-barred.

long history of not having a Black Principal)."[16]  (Pl.'s Resp. Br. 4 (Ex. 1 to Pl.'s Resp.).)

He argues that it was "common knowledge" that Headland High School's principal was due

to retire a year after Calloway was terminated (Pl.'s Resp. Br. 4; *see also* Coe Dep. 114

(acknowledging that the principal had talked about retiring for several years) (Ex. 4 to Pl.'s

Resp.).)  Calloway's insinuation is that the Board's vote to not renew his position eliminated

him from the "front-runner" position for the new principal of Headland High School, a

position the Board wanted to reserve for a white applicant.  (*See* Pl.'s Resp. Br. 5-6.)

    Calloway's only evidence as to why he would have been the most "credible" candidate

to fill the Headland High School vacancy (Pl.'s Resp. Br. 6), however, are his own

speculation and self-serving assessment of his position.  When asked in his deposition what

evidence he could show that *race* was the basis of his nonrenewal, he stated that "[i]n [his]

mind . . . someone does not want a black male at Headland High School, period."  (Calloway

Dep. 153 (Ex. 1 to Def.'s Mot. Summ. J.).)  The nonrenewal was "contrived to discredit

[him]" so that he would not have a position at Headland High School, as he was, in his view,

entitled to return there based on his "experience and seniority in the system."  (Calloway

Dep. 153, 154 (Ex. 1 to Def.'s Mot. Summ. J.).)  In his response, Calloway also delineated,

by race, the principals and assistant principals in the Henry County schools at the time Coe

---

[16] He argues that he would have been in that position if he had been hired as the principal of
Abbeville High School two years earlier as well.  (Pl.'s Resp. Br. 4.)

became superintendent and three years later, to create an inference of Coe's discrimination.[17]

(Pl.'s Resp. Br. 5-6.)

Calloway's claim that Coe's recommendation and the Board's decision not to renew his contract fails for myriad reasons.  First, he fails to establish a *prima facie* case.  It is undisputed that a black female was hired for the position of principal of Abbeville Middle School.  Second, even assuming Calloway's logic is instead that his denied renewal effectively served as a rejection for the position of principal of Headland High School, it is questionable whether he even established a *prima facie* case for that application, considering

---

[17]　　　　Under [Title VII], an employer may be found liable for unlawful [ ] discrimination under any one of three discrete theories: pattern and practice discrimination, disparate treatment discrimination, or disparate impact discrimination.  Both pattern and practice and disparate treatment claims require proof of discriminatory intent; disparate impact claims do not. . . . [I]n a disparate treatment case, the plaintiff bears the ultimate burden of proving that the employment action at issue was taken because of the plaintiff's sex.  *See Holifield v. Reno*, 115 F.3d 1555, 1564-65 (11th Cir.1997).  Likewise, in a pattern and practice case, the plaintiff must prove, normally through a combination of statistics and anecdotes, that discrimination is the company's "standard operating procedure."

In contrast, disparate impact theory prohibits *neutral* employment practices which, while non-discriminatory on their face, visit an adverse, disproportionate impact on a statutorily-protected group.

*E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1273-74 (11th Cir. 2000) (emphasis in original) (footnote and citations omitted).

Calloway has provided no indication that he is pursuing his Title VII claim under a pattern and practice or disparate impact theory.  Besides, Calloway's evidence can hardly be considered "strong statistical evidence" of the sort coupled with anecdotal evidence to show a pattern and practice of discrimination.  *See id.* at 1287 (citation omitted).  Even on Calloway's numbers, his argument is weak.  The principal at Headland Middle School for the 2008-2009 school year, an allegedly majority-white school, was black.  One in six of the positions in the Headland schools was therefore held by a black; at the beginning of Coe's tenure, two of six were.  With such a small sample size, and the influence of other crucial variables (evidence of which Calloway does not provide), this late positioning hardly jump starts Calloway's argument.

that he has shown no evidence that the Board was actively seeking applicants for the position at the time of his nonrenewal.

Regardless, Calloway has failed to show how the reasons the Board gave for not renewing his position were pretextual. A good portion of the parties' briefs wrangles over the facts surrounding the reasons Coe specifies for his recommendation. It is unnecessary to catalog every dispute. A few facts remain undisputed, and these facts justify Coe's recommendation and the Board's decision.

Calloway admits that while he was principal, there was a meeting with the Alabama Department of Education officials for a review that determined the availability of federal funds, and that he was so unprepared for the meeting that it had to be rescheduled. (Calloway Dep. 95-96 (Ex. 1 to Def.'s Mot. Summ. J.); Coe Aff. ¶ 15; Danny K. Hooper Aff. ¶¶ 1, 4 (Ex. 3 to Def.'s Mot. Summ. J.).) He admits that Coe even came to talk to him in advance prior to the meeting about issues that would be addressed during the meeting. (Calloway Dep. 100-03 (Ex. 1 to Def.'s Mot. Summ. J.).) Calloway provides excuses for his performance (*see* Calloway Dep. 104, 108 (Ex. 1 to Def.'s Mot. Summ. J.)), but does not dispute the fact that the meeting had to be rescheduled because, in the words of the federal programs coordinator, Calloway was "very poorly prepared." (Hooper Aff. ¶ 4; *see* Calloway Dep. 108 (confirming that Hooper's assessment was "accurate") (Ex. 1 to Def.'s Mot. Summ. J.).)

Coe also cites Calloway's tardiness in arriving to school.  (*E.g.*, Coe Aff. ¶ 7.)

Calloway does not dispute Coe's testimony that county policy as set out in a handbook was

that principals had to arrive at 7:00 a.m. to school as a general rule, and that they should

arrive thirty minutes prior to students arriving.  (Coe Dep. 43 (Ex. 4 to Pl.'s Resp.).)

Calloway estimated that his students arrived at school at "7:20, 7:25, 7:30," and that he had

to be at school at "7, 7:15," and admits that on the day Coe saw him arrive late, Calloway

arrived after 7:15.  (Calloway Dep. 63 (Ex. 1 to Def.'s Mot. Summ. J.).)  He also admits to

being late on other days.  (Calloway Dep. 70 (Ex. 1 to Def.'s Mot. Summ. J.).)  He explains

his behavior in the following way:

> Well, I could have gotten there at 7:00.  But I'm still early.  I'm there before
> *most* of the kids are there.  And would you say that's on time?  It wouldn't be
> if I was supposed – if I was supposed to be there at seven.  But I never had that
> discussion about I was supposed to be there *exactly* at seven.  But I guess – I
> guess I can assume that it should have been unspoken.  I should have known
> that, I guess.  But there were times that I did run late, yes.

(Calloway Dep. 69-70 (emphases added) (Ex. 1 to Def.'s Mot. Summ. J.).)  That testimony

falls short of establishing that the tardiness excuse was pretextual.  Indeed, it effectively

confirms the Board's position.

Calloway also admits that he granted teachers' request for an Academic Audit Day,

a day in which students are dismissed and teachers confer over certain student

determinations.  (Calloway Dep. 76 (Ex. 1 to Def.'s Mot. Summ. J.).)  He said he assumed

it had already been approved because it had been scheduled every year for years before that

date.  (Calloway Dep. 76 (Ex. 1 to Def.'s Mot. Summ. J.).)  He released eighth graders from

school that day. (Calloway Dep. 75-76 (Ex. 1 to Def.'s Mot. Summ. J.).)  Calloway claims that Coe never orally told him "don't you dare do it" (Calloway Dep. 81 (Ex. 1 to Def.'s Mot. Summ. J.)), and that a letter sent to him from Coe before the day confirmed Coe's approval (*see* Audit Day Ltr. (Ex. B to Coe Aff.)).  Nevertheless, even by Calloway's own testimony, Coe told Calloway that the Alabama Department of Education had concerns about the day and that Calloway did not need to give teachers free days in the future.  (Calloway Dep. 78, 80 (Ex. 1 to Def.'s Mot. Summ. J.).)  The letter from Coe to Calloway memorialized Coe's concerns:

> In light of the seriousness of the situation, I am summarizing in writing the conversation we held yesterday in regard to the 8th grade students at your school.  The Code of Alabama, along with the State Department of Education, requires that students be in school a minimum of 175 days per year.  While the State Department does grant very little leniency in dealing with high school seniors around graduation time, it in no way provides for any leeway in altering the number of instructional days for our students.  I realize that you were merely using the schedule of last year; however, in all reality, all that has been accomplished is another teacher workday for the 8th grade teachers, and one less instructional day for these students.  I have extinguished any concerns that have been directed from the State Department, *but have done so with a great deal of embarrassment*. . . . I hope and expect that in the future all decisions of this magnitude should be approved by my office first.  Thank you for your usual fine cooperation.

(Audit Day Ltr. (emphasis added).)  That Calloway may have *excuses* for the day off does not alone delegitimize Coe's impression of its seriousness or how it reflected on Calloway's judgment.

In another letter from Coe to Calloway addressing an event for which Calloway again gives excuses but does not dispute the basic facts, Coe stated the following:

It was brought to my attention today that you allowed a blood sibling of an adopted child access to the school during the school day. As you can imagine, the adoptive parents (as well as the office of DHR) are extremely upset and concerned about the situation. Your actions may very well create a hardship great enough for the adoption to fall through. Both the adoptive parents, student, and blood parents are in great distress and may be considering legal action against the school system because of your actions. Your actions are also in direct violation of the Family Education Rights and Privacy Act (FERPA).

(FERPA Ltr. (Ex. C to Coe Aff.).) Even if Calloway's decision was understandable given the circumstances (*see* Calloway Dep. 90-91 (Ex. 1 to Def.'s Mot. Summ. J.)),[18] that does not erase the fact that before Coe at the time of his recommendation was this incident, the facts of which are largely not in dispute.[19]

The Board cites other evidence for Coe's recommendation and its decision, for example, that Calloway failed to ensure students were receiving grades in a certain class, and that Coe had to personally straighten out the program. (Coe Aff. ¶ 11.) Calloway's response was that when the problem was brought to his attention, he fixed it, but he cannot deny Calloway's assessment that it was a serious concern. (Calloway Dep. 116 (Ex. 1 to Def.'s Mot. Summ. J.).)

It is unnecessary to delve into the other details the Board and Calloway dispute with regard to the cleanliness of the school and the discipline of the students. The facts already

---

[18] The court expresses no finding on this point.

[19] Calloway disputes that he violated FERPA, but regardless of the legal resolution to that question, Calloway possibly violated FERPA and his actions were responsible for problems for the student's family and the school system. Calloway has presented no evidence that Coe did not "honestly believe[]" the facts as portrayed to him. *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1318 n.6 (11th Cir. 2003) (per curiam).

described confirm that Coe's reasons for not recommending Calloway's renewal, and the Board's vote on that recommendation, were justified.  These issues during Calloway's probationary term as principal of Abbeville Middle School did not occur in a vacuum.  Each discrete problem compounded together more than justifies the Board's decision given that Calloway is unable to dispute the basic facts as they appeared to Coe and to the Board.

Calloway also cannot point to any reason why the Board's hiring of the white applicant who eventually became principal of Headland High School evidences pretext.  Calloway may believe the Board's decision was unfair, and may or may not be justified in that belief, but he has shown nothing to prove it was *racially* discriminatory.  "It is by now axiomatic that [the courts] cannot second-guess the business decisions of an employer." *Rowell v. BellSouth Corp.*, 433 F.3d 794, 798 (11th Cir. 2005).  The role of the courts "'is to prevent unlawful hiring practices, not to act as a super personnel department . . . .'" *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1092 (11th Cir. 2004) (quoting *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1254 (11th Cir. 2000)).

## V.  CONCLUSION

Accordingly, it is ORDERED that the Board's motion for summary judgment (Doc. # 18) is GRANTED.  An appropriate judgment will be entered.

DONE this 22nd day of June, 2009.

_____/s/   W.  Keith Watkins_____
UNITED STATES DISTRICT JUDGE